## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Joshua Champion,
3144 Kelly St SW
Washington, DC 20032

Susan Scharf
408 Ravenna St. S.
Nokomis, FL 34275

Robert Shane
1403 Charleston Ct
Warrensburg, MO 64093

Anthony Verias
7311 4th Avenue D3
Brooklyn, NY 11209

       Plaintiffs,

   v.

Does,

       Defendants.

Civil Action No.

## <u>CLASS ACTION COMPLAINT</u>

### INTRODUCTION

1.     Americans received 87.5 billion spam text messages and 72.2 billion spam calls to their cell phones last year. *The RoboKiller Report 2021 Phone Scam Insights* (last accessed August 29, 2022). Much of this spam also involved scams. In 2021, telephone scammers stole an estimated $40.3 billion from victims. *Id*.

2.     As the Supreme Court explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government

receives a staggering number of complaints about robocalls… For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343.

3.      Yet after 30 years, telephone spam is not decreasing. It is getting worse. From 2020 to 2021, telephone spam increased by 60%. *Id.*

4.      The plague of telephone spam and scams needs to be stopped.

5.      The Doe Defendants in this case are among the most prolific spammers who regularly violate the law.

6.      They are not only trying to sell products, but to obtain personal information and often defraud consumers.

7.      **One of the primary obstacles to stopping this onslaught of telephone spam, and these Defendants, is that they hide their identities** in violation of the law. E.g., 47 C.F.R. § 64.1200(d)(4); Fla. Stat. § 501.059(2).

8.      When spammers hide who they are, victims cannot enforce their rights and the spammers evade liability.

9.      Plaintiff Joshua Champion ("Champion") has received at least 2,513 spam text messages and calls in the last three years in which the spammers have hid their identity. The actual number of spam text messages and calls he has received is higher.

10.      Plaintiff Susan Sharf ("Sharf") has received at least 192 spam text messages and calls in the last year in which the spammers have hid their identity. The actual number of spam text messages and calls she has received is higher.

11.      Plaintiff Robert Shane ("Shane") has received at least 387 spam text messages and calls in the last two years in which the spammers have hid their identity. The actual number of spam text messages and calls he has received is higher.

12.     Plaintiff Anthony Verias ("Verias") has received at least 159 spam text messages and calls in the least year in which the spammers have hid their identity. The actual number of spam text messages and calls he has received is higher.

13.     In addition to Champion, Scharf, Shane, and Verias, Plaintiffs' counsel has 2,600+ other clients who have received and reported 38,000+ telephone spam calls and text messages in the last few years in which the spammers have hid their identity. The number of clients and reported spam continues to grow every day.

14.     After thousands of hours of investigation and forensic research, the identities of these spammers are still unknown and will remain unknown without the aid of discovery.

15.     The Doe Defendants herein are liable for inundating Champion, Scharf, Shane, and Verias with thousands of automated calls and text messages, without disclosing their identities, to individuals who have registered their phone numbers on the National Do Not Call Registry ("DNCR"). These text messages and calls violate multiple provisions of the Telephone Consumer Protection Acts ("TCPA") and other state laws.

16.     The Doe Defendants also sent millions of other text messages and calls to class members, including the 2,600+ other clients of Plaintiffs' legal counsel, without disclosing their identities.

17.     Because of the Doe Defendants' continuing violations of the law, Plaintiffs bring this action for themselves and for other similarly situated people in the United States to enjoin these abusive practices, and for damages.

## JURISDICTION AND VENUE

18.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the TCPA, 47 U.S.C § 227.

19.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial portion of the events giving rise to this lawsuit occurred in this District and victim Joshua Champion resides in this district.

20.     This Court has supplemental jurisdiction over the state claims under 28 U.S.C § 1367.

## PARTIES

21.     Plaintiff Joshua Champion is a resident of Washington, D.C. He is the subscriber and user of the residential cell phone number 202-492-0336, which he registered on the Do Not Call Registry on June 11, 2019.

22.     Plaintiff Susan Sharf is a resident of Nokomis, Florida. She is the subscriber and user of the residential cell phone number 941-451-3346, which she registered on the Do Not Call Registry on May 27, 2014.

23.     Plaintiff Robert Shane is a resident of Warrensburg, Missouri. He is the subscriber and user of the residential cell phone number 660-287-6363, which he registered on the Do Not Call Registry on December 15, 2008.

24.     Plaintiff Anthony Verias is a resident of Brooklyn, New York. He is the subscriber and user of the residential cell phone number 917-808-0069, which he registered on the Do Not Call Registry on April 17, 2022.

25.     Defendants Does are currently unknown individuals and entities who initiated calls and text messages to Plaintiffs and class members, or who are otherwise liable for these calls and text messages. These Doe Defendants have concealed their identities and can only be identified via discovery.

## FACTUAL ALLEGATIONS

26.     Like most Americans, Plaintiffs have a mobile residential telephone.

27.     Being mobile, they take their phones everywhere they go. They use their phones to receive and make important phone calls, to get emergency information, and to send text messages to family members and friends. They use their phones regularly in their home and for their personal enjoyment.

28.     But Plaintiffs' phone, home, and privacy have been invaded by the Doe Defendants who have made thousands of calls and text messages.

29.     Champion has received at least 2,513 spam text messages and calls in the last

three years in which the Doe Defendants have hid their identities. The actual number of spam

text messages and calls he has received is higher. Here are a few examples:

    i.      [CITI-ONLINE]: Your debit card is blocked due to unusual activities, verify
now https://citi40.com

       - This was a text message from 831-529-6923 on May 5, 2022
       - This was not from Citi Bank, and is likely a scam

    ii.     Your delivery information is incorrect and will not be delivered. Please update
in time. http://uspdeliveries.com/MnCF

       - This was a text message from 213-539-6224 on May 2, 2022
       - This is not from UPS, and is likely a scam

    iii.    ""..Plan yours New year We are hear to help You Get $5ooo
todayhelp.rest..@mr421sdf

       - This was a text message from 325-733-0756 on April 27, 2022
       - This is an unknown spammer trying to sell a personal loan

30.     Sharf has received at least 192 spam text messages and calls in the last year in

which the Doe Defendants have hid their identities. The actual number of spam text messages

and calls she has received is higher. Here are a few examples:

    i.      Your shipment is being scheduled for a new distribution date. Respond ok to
proceed Stop to End

       - This was a text message from 701-892-0175 on July 4, 2022
       - The is an unknown spammer, and likely a scam.

    ii.     Hi, it's Matt Patel from Lendiad. Check accnt balance and continue searching
in seconds for 3950 deposit. GO: checkgo.cc/JGsPTZ2N Msg STOP to end

       - This was a text message from 844-944-1370 on June 17, 2022
       - Lendiad is not a registered company or DBA in any state

     iii.    Compensation card pending: Reply yes, to move forward. STOP to end

         - This text message was from 316-219-9499 on July 3, 2022
         - This is an unknown spammer, and likely a scam

31.    Shane has received at least 387 spam text messages and calls in the last two years in which the Doe Defendants have hid their identities. The actual number of spam text messages and calls he has received is higher. Here are a few examples:

     i.    Latest bill processed! Thank you for your support. Here's a little something for you >> 6ghme.info/8t1j9pidO8

         - This was a text message from 213-309-4791 on September 11, 2021
         - No bill was processed. This is a spammer trying to get the recipient to click

     ii.    This is yours, We found a refund payment of $681.25 is due to you on your Insurance Policy. Claim REFUND HERE: 49tj5.info/ZvERg5bbuS

         - This was a text message from 213-422-3201 on August 11, 2021
         - There was no refund, and this was to simply to sell insurance

     iii.    Five calls that all originated on the Sinch Voice telephone network within a month period, in which the caller did not identify themselves, and per the conversations with the callers it appears to be the same entity calling:

- From 314-784-9403 on July 28, 2022
- From 480-856-9126 on July 28, 2022
- From 725-699-8560 on August 8, 2022
- From 660-650-8448 on August 17, 2022
- From 660-200-9605 on August 29, 2022

32.    Verias has received at least 159 spam text messages and calls in the last year in which the Doe Defendants have hid their identity. The actual number of spam text messages and calls he has received is higher. Here are a few examples:

     i.    Hi this is Tammy Wright. Our records indicate that you qualify for a financial hardship loan that can eliminate credit card collections and personal loans over

$10,000. Your approval code is 210722. Your approval will remain open in my system for only one more day if you could call me as soon as possible at 202-951-1148. Again that's 202-951-1148. Thank you.

- This was a prerecorded voicemail from 920-677-7557 on August 29, 2022
- This was promoting financial services

    ii.    sweetlookgl30.me. $16}4

- This was a text message from 405-638-8994 on August 22, 2022
- This promoted adult content without consent

    iii.    Win now-> Check it out http://f0undlth3r3.link/aQiBvy7h

- This was a text message from 341-345-2647 on August 19, 2022
- This was a gift card promo

33.     A complete list of all the spam is thousands of pages, but counsel has records like those above for each Plaintiff and for each of the 38,000+ spam calls and texts already reported by class members.

34.     As the examples above show, the Doe Defendants do not disclose their identities.

35.     The calls and texts to Plaintiffs represent the most complained about spam including offers to for solar panels, weight loss products, keto, CBD gummies, financial assistance, loans, credit monitoring services, insurance, get rich quick schemes, and more. They also attempt to obtain personal information and defraud consumers.

36.     Most the spam came from different numbers, making it impossible to block.

37.     When a text message contained a URL hyperlink, the URLs initially redirected to a sales webpage. However, after a few days, the URLs typically were either deactivated or redirected to generic websites such as google.com. Defendants purposefully do this to hide their identities and to prevent getting caught.

38.     Defendants initiated this spam while Plaintiffs and many of the class members were on the National Do Not Call Registry ("DNCR").

39.     Plaintiffs never provided their numbers to Defendants, never had a relationship with Defendants, and never gave permission for Defendants to contact them in any way.

40.     Defendants knew that the recipients had not consented to receive the spam, but Defendants have done nothing to change their practices.

41.     Instead, Defendants continue to blast text messages and calls without caring if consent was obtained or if the recipient was on the DNCR, all while hiding their identities.

42.     Plaintiff Sharf and members of the Florida Leads Class have had their phone numbers registered on the Florida "no sales solicitation calls" list. Yet, their phone numbers have been sold by lead generators while on this list, as evidenced by the fact that they have received phone calls and text messages from parties who say their numbers were provided by a lead generator.

43.     When calls were answered, there typically was a pause and a beep before someone started talking. Many of the text messages were sent from short codes. When Plaintiffs responded to the texts, there was no reply. All this indicates that Defendants most likely used Automated Telephone Dialing Systems.

44.     Additionally, it is highly likely that Defendants sequentially or randomly generated Plaintiffs' phone numbers because Plaintiffs never provided their phone number to Defendants, the calls and texts were not personalized, the calls and texts came from different phone numbers each time, Defendants hid their identity, and Plaintiffs have received a very high volume of spam.

45.     The unwanted spam invaded Plaintiffs' substantive right to privacy, namely the right to be free from unsolicited text messages and calls. The spam has caused Plaintiffs frustration! Who keeps calling them and why? How can they get it to stop? Why are these spammers wasting their time? When the spammers hide their identity, it hinders Plaintiffs from enforcing their rights to determine the purpose of the call, to make a do-not-call request, and to monitor compliance with the TCPA and other state laws. The spam causes Plaintiffs to avoid looking at their phones when it may be important or interrupting other activities to respond to an

unwanted, spam call or text message. The spam reduces their phones' storage and battery life. In short, the spam invades their privacy, diminishes the value of their phones and their enjoyment of life, and causes a nuisance, an annoyance, and an intrusion into their seclusion.

**TELEPHONE SPAM WITH MULTIPLE PARTIES**

46.     Telephone spam can involve one or more parties.

47.     The majority of telephone spam that Plaintiffs and class members have received from the Doe Defendants involves multiple parties.

48.     How many parties are involved in the telephone spam—and which parties are liable for TCPA violations—depends on how the telephone campaign is arranged.

49.     To understand what parties can be involved, it is necessary to understand the following components of any telephone campaign:

Always present in a telephone campaign

   i.     **Lead Generator** – The party who generates leads or phone numbers to call

  ii.     **Caller** – The party initiating and sending the SMS or calls

 iii.     **Seller** – The party whose goods or services are being promoted

Sometimes present in a telephone campaign

 iv.     **Marketing Broker/Affiliate Network** – A party connecting Sellers with Callers

50.     If a company generates their own phone numbers to be called, places the calls themselves, and promotes its own services, there is only one party involved. The company acts as Lead Generator, Caller, and Seller.

51.     If a company hires a call center to promote the company's services and provides the call center with the phone numbers to be called, there are two parties involved. The company acts as Lead Generator and Seller, and the call center acts as Caller.

52.     If a company wants to promote its services without having to worry about the lead generation or the calling campaign, the company could hire a Lead Generator and a Caller. The Lead Generator will generate phone numbers to be called. The Caller will call the generated phone numbers and promote the company's services. In this arrangement there are three separate parties, each respectively acting as Lead Generator, Caller, and Seller.

53.     A Seller who wants to promote its services at scale can also hire a Marketing Broker ("Broker"). Brokers go by various names, the most common being "Affiliate Network." When a Seller works with a Broker, the Broker will have one or more Callers who promote the Seller's services in exchange for performance-based commission. For example, for each sale that a Caller generates through the Caller's own marketing efforts, a Seller might pay $80 to the Caller and $20 to the Broker.

54.     When there is a Broker, there are at a minimum three parties involved: Seller, Broker, and Caller. However, it is *very* common for there to be multiple Brokers. This happens when a Broker outsources to a second Broker, who outsources to a third Broker, etc., like this:

$$Seller \rightarrow Broker\ 1 \rightarrow Broker\ 2 \rightarrow Broker\ 3 \rightarrow Caller \rightarrow Lead\ Generator$$

55.     Over 95% of all the SMS spam sent by the Doe Defendants to Plaintiffs and class members involves two or more Brokers, which means there are a minimum of four parties involved: a Seller, a Caller, and two or more Brokers.

56.     When Callers send text messages, they usually include URL hyperlinks in the text messages. Callers and Brokers track their efforts by using data in these URLs. For example, in the URL example.com?**S1**=2337&**S2**=5215 there are two parameters: S1=2337 and S2=5215. These two parameters may identify the first and second Broker, respectively. While there is no uniform method or naming convention that Callers and Brokers use to track their efforts, they all keep very meticulous records of the values in the URLs because each value means something. The values in the URLs are how the parties track their marketing efforts and how Callers and Brokers are properly compensated for their efforts and results.

57.     The Doe Defendants have used many tactics to hide their identities, including purposefully not telling who they are, using fake names, creating anonymous web pages, registering their U.S. companies overseas, providing invalid call back numbers so they cannot be reached, not answering when someone returns missed calls, immediately hanging up if you ask what business they are with, and more.

58.     Sellers and Brokers often outsource to call centers, typically overseas. When these Sellers and Brokers are asked about who sent the text messages or calls that directed to the Sellers or Brokers, they respond: "We didn't send the spam. And we won't tell you who did." These Sellers and Brokers often maintain control over their Callers by telling the Callers what lists to call, when trademarks can and cannot be used, whether to scrub against the Do Not Call Registry, what scripts to use, and more. These Sellers and Brokers may thus be vicariously liable for the conduct of their Callers. Yet, without the aid of discovery to learn who the Callers are, and what control the Sellers and Brokers exercised over their Callers, it is impossible to hold the appropriate parties liable.

59.     It is also very common for Sellers, Brokers, and Callers to cover for each other's illegal conduct. When consumers complain to Sellers or Brokers about telephone spam, the Sellers and Brokers rarely will sever ties with the Caller. Instead, the Sellers and Brokers will only tell the Caller not to call that specific consumer anymore. Sellers and Brokers frequently settle demand letters they receive that involve the illegal calls of text messages of their Callers. They do this to hide the Caller's identity. The Sellers and Brokers know—or have reason to know—that a Caller is violating the TCPA, but they do nothing about it and keep working with the Caller. Thus, Sellers and Brokers ratify, and may be vicariously liable for, the illegal conduct of their Callers. Without the aid of discovery to see whether Sellers and Brokers have continued to work with Callers after receiving complaints about their spam, it is impossible to hold Sellers and Brokers vicariously liable as permitted by law.

60.     Often the Sellers, Brokers, and Callers involved in the telephone spam are operated through shell companies, or entities with limited to resources, effectively making them

judgment proof. Yet, the founders, principals, and executives of these companies are sending, approving, directing, and overseeing the spam. These individuals may thus be individually liable. Without the aid of discovery, it is impossible to learn who the individuals are that are actually sending, approving, directing, and overseeing the spam.

61. In addition to randomly or sequentially generating phone numbers to call, Callers buy lists of phone numbers from Lead Generators. When selling leads, Lead Generators rarely, if ever, scrub against Florida's "no sales solicitation calls" list and thus they illegally sell consumers' information. Without the aid of discovery, it is impossible to learn who the Lead Generators are that are illegally selling these phone numbers.

62. Plaintiffs have so far been unable to ascertain the identities of the Callers who sent the spam texts and calls to Plaintiffs and class members, or the identities of the Lead Generators who have the sold the phone numbers of Plaintiff Sharf and the Florida Leads Class.

63. Champion, Scharf, Shane and Verias have received thousands of spam calls and texts in which the spammers have hidden their identities. Class members—including the 2,600+ clients of Plaintiffs' legal counsel—also have many spam calls and texts in which the spammers have hidden their identity. Various data points indicate that many of the 2,600+ clients have received spam from the same spammers as Champion, Sharf, Shane, and Verias. However, because the spammers hide their identities, it is impossible to know who each of the spammers are and who they have spammed.

64. Plaintiffs have identified phone carriers, domain registrars, Sellers, Brokers, and others who have discoverable information related to the identities of the Callers. Subpoenas to these parties should reveal the identities of the Callers initiating the calls and texts, as well as the identities of those who may be individually or vicariously liable. Additionally, subpoenas should identify the Lead Generators who have sold the phone numbers of Plaintiff Sharf and the Florda Leads Class.

## LEGAL STANDARD

65.     **Doe Defendants**. Generally, courts "will not entertain a suit unless the defendant has been made a party by service of process. Courts do grant an exception to this rule for 'John Doe' defendants, but only in situations where the otherwise unavailable identity of the defendant will eventually be made known through discovery." *Collingsworth v. Drummond Co.*, Civil Action No. 19-1263 (ABJ), 27-28 (D.D.C. May. 29, 2020) (citing *Newdow v. Roberts*, 603 F.3d 1002, 1010 (D.C. Cir. 2010)).

66.     **Identification of Caller and Seller**. Both the TCPA and state law requires telemarketers to disclose the name of the individual caller and the name of the person or entity on whose behalf the call is being made. 47 C.F.R. § 64.1200(d)(4); see also Fla. Stat. § 501.059(2).

67.     **Do Not Call Registry**. People who do not want to receive telephone solicitations may place their phone number on the national Do Not Call Registry. 47 C.F.R. § 64.1200(c)(2). The TCPA proscribes callers from making "any telephone solicitation to… [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry." *Id*. Wireless telephone subscribers are allowed to place their number on the DNCR. 47 C.F.R. § 64.1200(e). See *McDermet v. DirecTV, LLC*, No. CV 19-11322-FDS, 2021 WL 217336, at *12 (D. Mass. Jan. 21, 2021).

68.     **Autodialed Calls**. The TCPA provides that no person or entity shall make a call "using an automatic telephone dialing system or an artificial or prerecorded voice… [t]o any… cellular telephone" unless the call is "made for emergency purposes or made with the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A)(iii); see also 47 C.F.R. § 64.1200(a)(1). If the call "introduces an advertisement or constitutes telemarketing" then "prior express **written** consent" is required. 47 C.F.R. § 64.1200(a)(2) (emphasis added).

69.     **Text message are calls**. Both phone calls and text messages qualify as a "call" under the TCPA. *Satterfield v. Simon Schuster*, 569 F.3d 946, 954 (9th Cir. 2009).

70.     **Direct Liability**. A party who initiates or makes the calls is liable for any TCPA violations. A party who does not initiate or make the calls, but is so involved in the placing of the calls, may be deemed to have initiated them and thus liable. A court must look to the totality of the facts and circumstances, including the extent to which the party willfully enabled a violation of the TCPA, assisted therein, and knowingly allowed the use of its services for unlawful purposes. *Mey v. All Access Telecom, Inc. et al,* see also*, United States v. Dish Network LLC*, No. 09-cv-3073, 2017 U.S. Dist. LEXIS 8553 (C.D. Ill. June 5, 2017).

71.     **Vicarious Liability**. "[A] defendant may be held vicariously liable for TCPA violations." *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 879 (9th Cir. 2014). Vicariously liable includes actual authority, apparent authority, and ratification. *Cabrera v. Gov't Emps. Ins. Co.*, 452 F. Supp. 3d 1305, 1316 (S.D. Fla. 2014). The "essential element" of an agency relationship is the "principal's control over the agent's actions." *Wilson v. PL Phase One Operations L.P.*, 422 F. Supp. 3d 971, 980 (D. Md. 2019) (citing Rest. (3d) of Agency § 1.01, cmt. f). A principal that learns of illegal behavior committed by its agents, chooses to do nothing, and continues to receive the gains, ratifies the agent's acts. See *United States v. Dish Network L.L.C.*, 954 F.3d 970, 976–77 (7th Cir. 2020), cert. dismissed, 141 S. Ct. 729, 208 L. Ed. 2d 508 (2021). "Evidence of these kinds of [agency] relationships… consumers may acquire through discovery, if they are not independently privy to such information." *In re Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6593 (2013).

72.     "Sellers are 'in the best position to monitor and police TCPA compliance by third-party telemarketers,' and vicarious liability incentivizes companies to keep their telemarketers in compliance with the law. *Bradley v. DentalPlans.com.*, No. CV CCB-20-1094, 2022 WL 2973979, at *7 (D. Md. July 27, 2022) (citing *In re Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6588 (2013)). Consumers would have no "relief from intrusive robocalls if Sellers could 'avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties,' who are often 'judgment proof, unidentifiable, or located outside the United States.' *Id.*

73.     **Personal Liability**. Individuals may be personally liable for TCPA violations when they "actually committed the conduct that violated the TCPA, and/or actively oversaw and directed this conduct." *City Select Auto Sales Inc. v. David Randall Assocs.*, 855 F.3d 154, 162 (3d Cir. 2018); see also 47 U.S.C. § 217.

74.     **Florida Leads**. "Any person who offers for sale any consumer information which includes residential, mobile, or telephonic paging device telephone numbers… shall screen and exclude those numbers which appear on the division's then-current 'no sales solicitation calls' list." Fla. Stat. § 501.059(4). The "no sales solicitation calls" list is updated quarterly with Florida phone numbers that are on the DNCR. *Id.* at § 501.059(3)(d).

## CLASS ACTION ALLEGATIONS

75.     Pursuant to Civ. R. 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiffs brings this action on behalf of themselves, and three Classes of persons similarly situated in order to remedy the ongoing unlawful business practices alleged herein and to seek redress on behalf of all those persons who have been harmed thereby, including injunctive relief.

76.     **Class Definitions.** Plaintiffs propose the following Classes:

### The Failure To Identify Class

All people in the United States (1) who within four years prior to the filing of this action, (2) received more than one telephone solicitation via call or text message within any 12-month period, (3) to their residential cellular telephone number, (4) where the call or text did not disclose the identity of the individual caller and the identity of the entity on whose behalf the call or text was made.

### The Do Not Call Class

All people in the United States (1) who within four years prior to the filing of this action, (2) received more than one telephone solicitation via call or text message within any 12-

month period, (3) to their residential cellular telephone number, (4) while listed on the national Do Not Call Registry.

**The Automated Calls Class**

All people in the United States who (1) within four years prior to the filing of this action, (2) Defendants sent a text message or initiated a call to their cellular telephone, (3) using the same equipment or type of equipment utilized to send text messages or calls to Plaintiffs.

**The Florida Leads Class**

All Florida residents (1) whose phone number was sold (2) while listed on the Florida "no sales solicitation calls" list (4) within four years prior to the filing of this action.

77. **Numerosity.** Proposed classes with hundreds of members are routinely held to satisfy the numerosity requirement. In determining whether to certify a class, it is not necessary for a court to know the precise number of class members. Rather, the court may rely upon reasonable inferences drawn from the known facts.  Here, the Classes are so numerous that joinder of all members would be impracticable. The exact size of the Classes and the identity of the members are readily ascertainable from business records and likely number in at least the tens of thousands. Upon information and belief, Defendants' sent millions of texts and initiated millions of calls in the last four years.

78. **Common Questions of Law and Fact**. There are questions of law and fact common to the proposed Classes. These questions include, *inter alia*:

     i.    Did they receive a text or call from Defendants?

     ii.   Was the number called registered on the Do Not Call Registry?

     iii.  Did Defendants use an ATDS?

     iv.   Were the calls for an emergency purpose?

v.    Did the text message or call properly identify the sender?

79.    **Typicality**. Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of the claims or defenses of the class. This requirement seeks to ensure that the interests of the named representatives align with the interests of the members of the proposed class. A named plaintiff's claim is typical if the claim arises from the same practice, event or course of conduct giving rise to the other class members' claims and claims are based on the same legal theory. Plaintiffs' claims herein are typical of those of the Classes they seek to represent. Plaintiffs and the Class members claims arise from the same conduct of Defendants: text message and calls to people on the DNC registry, no identification of the sender, and calls and texts sent using an ATDS without express written consent. There are no unique issues or defenses to Plaintiffs claims. Plaintiffs' interest, to identify the spammers, aligns with members of the Class.

80.    **Adequacy.** The named representatives must have common interests with the unnamed members of the class, and it must be apparent that the named representatives will vigorously prosecute the interests of the class through qualified counsel. Plaintiffs are adequate representatives of the Classes because their interests are common with the interests of the Classes, and they will fairly and adequately protect the interests of the Classes by pursuing this matter. Plaintiffs are represented by counsel competent and experienced in TCPA and class action litigation.

81.    **The Class Is Clearly Defined and its Members Identifiable**. A class is sufficiently ascertainable when class members can be identified based on objective criteria. The Classes are ascertainable using objective criteria. Methods to be used include comparing the numbers texted to the DNC directory and reviewing records to determine batches of texts sent without proper identification of the sender.

82.    **Rule 23(b)(3) issues**. The questions of law and fact common to the class members predominate over questions affecting only individual members. A class action is superior to multiple individual suits because it conserves judicial resources, promotes consistency and

efficiency of adjudication, and deters illegal activities. The interest of individual members of the Classes in individually controlling the prosecution of separate claims against Defendant are small because the damages in an individual action for violation of the TCPA are small. Plaintiffs are not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above. Managing this case as a class action should have no significant difficulties once Defendants are identified.

Further, the law applicable to each putative class member is identical. The facts are too. Ultimately, the basic questions in this case are the same for all Class members: Did Defendants call or text a putative class member without authorization using an ATDS? For the DNC class the question is did Defendants call or text a putative class member who was registered on the DNC registry? For the Failure to Identify class the question is did the call or text properly identify the sender? Precedent demonstrates these questions can be litigated as a class.

83. **Rule 23(b)(2) issues.** Defendants have acted on grounds generally applicable to the Classes, thereby making final injunctive relief and corresponding declaratory relief with respect to the Classes appropriate on a class wide basis. Moreover, the telemarketing violations made by Defendants are likely to continue in the future if an injunction is not entered.

### FIRST CAUSE OF ACTION

**Violations of 47 U.S.C. § 227(c) & 47 C.F.R. § 64.1200(d)(4)**

**(On Behalf of Plaintiffs and the Failure To Identify Class)**

84. Defendants initiated telemarketing calls and texts to the residential cellular telephones of Plaintiffs, and members of the Failure To Identify Class, without disclosing the identity of the individual and identity of the entity on whose behalf the calls and texts were made, in violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d)(4).

85. As a result of the violations of 47 C.F.R. § 64.1200(d)(4), Plaintiffs and members of the Failure To Identify Class have been damaged and are entitled to an award of $500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(c)(5)(B).

86.     Because the violations were knowingly and willfully, the court should award $1,500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(c)(5)(B)-(C).

87.     Plaintiffs and members of the Failure To Identify Class are also entitled to and seek injunctive relief requiring Defendants to disclose the name of the individual and the name of the entity on whose behalf any telemarketing calls or text messages are sent.

## SECOND CAUSE OF ACTION

### Violations of 47 U.S.C. § 227(c) & 47 C.F.R. § 64.1200(c)(2)

### (On Behalf of Plaintiffs and the Do Not Call Class)

88.     Defendants' telephone solicitations via calls and text message to the residential cellular telephones of Plaintiffs, and members of the Do Not Call Class, while on the National Do Not Call Registry constitutes a violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)(2).

89.     As a result of the violations of 47 C.F.R. § 64.1200(c)(2), Plaintiffs and members of the Do Not Call Class have been damaged and are entitled to an award of $500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(c)(5)(B).

90.     Because the violations were knowingly and willfully, the court should award $1,500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(c)(5)(B)-(C).

91.     Plaintiffs and members of the Do Not Call Class are also entitled to and seek injunctive relief prohibiting Defendants from sending telephone solicitations via calls and text messages to phone numbers on the DNCR.

## THIRD CAUSE OF ACTION

### Violations of 47 U.S.C. § 227(b) & 47 C.F.R. 64.1200(a)(1)-(2)

### (On Behalf of Plaintiffs and the Automated Calls Class)

92.     Defendants used of an ATDS, artificial voice, or prerecorded voice to contact Plaintiffs and members of the Automated Calls Class in violation of 47 U.S.C. § 227(b) and 47 C.F.R. 64.1200(a)(1)-(2).

93.     As a result, Plaintiffs and members of the Automated Calls Class have been damaged and are entitled to an award of $500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

94.     Because the violations were knowingly and willfully, the court should award $1,500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(b)(3)(B)-(C).

95.     Plaintiff and members of the Automated Calls Class are also entitled to injunctive relief prohibiting Defendants from using an ATDS, artificial voice, and prerecorded voice when sending telemarketing text messages or making telemarketing calls without the prior express written consent of the called party.

## FOURTH CAUSE OF ACTION

### Violations of Fla. Stat. § 501.059 (4)

### (On Behalf of Plaintiff Scharf and the Florida Leads Class)

96.     Defendants sold the phone numbers of Plaintiff Scharf, and members of the Florida Leads Class, while their phone numbers were listed on Florida's "no sales solicitation calls" list in violation of Fla. Stat. § 501.059 (4).

97.     As a result, Plaintiff Scharf and members of the Florida Leads Class have been damaged and are entitled to an award of $500.00 in statutory damages for each violation, pursuant to pursuant to Fla. Stat. § 501.059 (10)(a)(2).

98.     Because the violations were knowingly and willfully, the court should award $1,500.00 in statutory damages for each violation, pursuant to Fla. Stat. § 501.059 (10)(a)(2).

99.     Plaintiff and members of the Florida Leads Class are also entitled to and seek injunctive relief, pursuant to Fla. Stat. § 501.059 (10)(a)(1), prohibiting Defendants from selling phone numbers listed on Florida's "no sales solicitation calls" list.

## RELIEF REQUESTED

Plaintiffs respectfully request that the Court grant Plaintiffs and all Class members the following relief against Defendants:

A.  An order allowing expedited discovery to identify the parties liable for the spam received by Plaintiffs and class members;

B.  Certification of the proposed Classes;

C.  Appointment of Plaintiffs as class representatives;

D.  Appointment of the undersigned as counsel for the Classes;

E.  An order requiring Defendants to disclose the actual name of the individual as well as the actual name of the entity on whose behalf any calls or text messages are sent when telemarketing;

F.  An order enjoining Defendants from making call or text message telephone solicitations to phone numbers on the DNCR;

G.  An order enjoining Defendants from using an ATDS, artificial voice, and prerecorded voice when sending text messages or making calls without the consent of the called party;

H.  An order enjoining Defendants from selling phone numbers listed on Florida's "no sales solicitation calls" list.

I.  An award of damages to Plaintiffs and the Classes, as allowed by law; and

J.  Orders granting such other relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiffs request a jury trial as to all claims of the Complaint so triable.


DATED September 6, 2022                    Respectfully Submitted,

                                           /s/ *James Wertheim*
                                           James Wertheim
                                           Bar No. OH0055
                                           LawHQ, P.C.
                                           299 S. Main St. #1300
                                           Salt Lake City, UT 84111
                                           385-285-1090 Ext 30049
                                           jim@lawhq.com

                                           *Attorney for Plaintiffs*