# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

JOSHUA CHAMPION, *et. al*,

    Plaintiffs,

  v.

DOES,

    Defendants.

Civil Action No. 1:22-cv-2697

## MEMORANDUM OPINION
(November 4, 2022)

Plaintiffs Joshua Champion, Susan Scharf, Robert Shane, and Anthony Verias ("Plaintiffs") allege that Doe Defendants, who are telephone spammers, violated their rights under the Telephone Consumer Protection Act of 1991. Plaintiffs bring their [1] Class Action Complaint for themselves and on behalf of other similarly situated people nationwide who have received spam calls and texts from Doe Defendants. Pending before the Court is Plaintiffs' [3] Ex Parte Motion for Expedited Discovery. Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court **GRANTS-IN PART** and **DENIES-IN-PART** Plaintiffs' Motion.

## I.    BACKGROUND

The Telephone Consumer Protection Act (TCPA) prohibits certain unsolicited telephone calls and texts. *See generally* 47 U.S.C. § 227. Specifically, the TCPA prohibits automated or prerecorded calls and text messages to cell phones or residential telephone lines without consent, as well as calls and text messages to phone numbers on the national do-not-call registry. *Id.* §

---

[1] The Court's consideration has focused on the following documents and their attachments and/or exhibits: Pls.' Class Action Compl., ECF No. 1 ("Compl."); Civil Cover Sheet, ECF No. 1-1 ("Civ. Cover Sheet"); Pls.' Ex Parte Mot. for Expedited Disc., ECF No. 3 ("Pls.' Mot."). In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

1

227(b)–(c).  Furthermore, the "person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller… and a telephone number or address at which the person or entity may be contacted."  47 C.F.R. § 64.1200(d)(4).  The TCPA created a private right of action enabling injunctive relief and damages.  47 U.S.C. § 227(b)(3)(A)–(B); *id.* § 227(c)(5)(A)–(B).  It "permit[s] aggrieved parties to recover at least $500 in damages for each call made (or text message sent) in violation of the statute."  *ACA Int'l v. FCC*, 885 F.3d 687, 693 (D.C. Cir. 2018).

Plaintiffs bring a putative class action pursuant to this private right of action alleging violations of the TCPA and a Florida state analogue, Fla. Stat. § 501.059.  *See* Compl. ¶¶ 65–74.  Plaintiffs allege they have received thousands of violative text messages and calls; for example, Lead Plaintiff Champion allegedly received 2,513 violative texts and calls in the last three years.  *Id.* ¶¶ 29–32.  Plaintiffs indicate that "[t]he majority of telephone spam that Plaintiffs and class members have received from the Doe Defendants involves multiple parties."  *Id.* ¶ 47.  Plaintiffs explain that the various parties at work in a spam telephone campaign include a caller, lead generator, seller, and sometimes a marketing broker / affiliate network.  *Id.* ¶ 49.  "Defendants Does are currently unknown individuals and entities who initiated calls and text messages to Plaintiffs and class members, or who are otherwise liable for these calls and text messages" through their roles as one of the aforementioned parties.  *Id.* ¶ 25.

Plaintiffs filed their complaint against Doe Defendants on September 7, 2022.  *See id* at 23.  They allege that the "Doe Defendants have concealed their identities and can only be identified via discovery."  *Id.* ¶ 25.  On September 12, 2022, Plaintiffs filed the pending Ex Parte Motion for Expedited Discovery to uncover the identities of Doe Defendants by subpoenaing factual information relevant to their identities from third parties.  Pls.' Mot. at 1.  Plaintiffs name

numerous phone carriers, domain registrars and domain-related parties, sellers, and brokers who they believe to have "discoverable information that will lead to the identification of the Doe Defendants," and indicated that others may also have such information. *Id.* at 6. They also indicate that "[t]he responses to Plaintiffs' subpoenas may reveal additional parties who have information which would assist Plaintiff in identifying Defendants, such as UPS Stores, landlords, email providers, and others." *Id.* at 9. The Court now addresses this request for expedited discovery.

## II. LEGAL STANDARD

A party may not seek discovery from any source before the parties have conferred at a discovery conference, subject to certain exceptions including "when authorized… by court order." Fed. R. Civ. P. 26(d)(1). In cases where the defendant is unknown, a party "cannot serve its complaint—much less confer with the defendant—without obtaining identifying information form a third party." *Strike 3 Holdings, LLC v. Doe*, 964 F.3d 1203, 1207 (D.C Cir. 2020). Accordingly, "the only potential avenue for discovery is [a court order] under Rule 26(d)(1)." *AF Holdings, LLC v. Does 1-1058*, 752 F.3d 990, 995 (D.C. Cir. 2014). "[D]istrict courts have broad discretion" to allow for such discovery but are nonetheless "cabined by Rule 26(b)'s general limitations on the scope of discovery." *Strike 3 Holdings, LLC*, 964 F.3d at 1207–08. Rule 26(b)(1) states that

> [p]arties may obtain discovery regarding any nonprivileged matter that is *relevant* to any party's claim or defense *and proportional* to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1) (emphasis added). This rule previously required a "'good cause' standard for court-ordered discovery" that was "replaced… with the overarching relevance and

3

proportionality standard." *Strike 3 Holdings, LLC*, 964 F.3d at 1207 n.2 (citing Fed. R. Civ. P. 26(b)(1) (2015)).  "[C]ourts must look carefully to the complaint's allegations to determine if the requested discovery is relevant and proportional to the needs of the case." *Id.* at 1210.

### III.   DISCUSSION

The Court is satisfied that Plaintiffs' request for expedited discovery is both relevant and proportional, when limited as set forth below.

### A. Relevance

Discovery to uncover an unnamed defendant is relevant when it is necessary and likely to reveal the defendant's identity, and when a plaintiff's allegations demonstrate a threshold showing of personal jurisdiction. *See id.* at 1210–11; *see also AF Holdings, LLC*, 752 F.3d at 995–96.

#### 1. Defendants' Identity

"It is well established that plaintiffs are permitted to proceed against John Doe defendants so long as discovery can be expected to uncover the defendant's identity." *Strike 3 Holdings, LLC*, 964 F.3d at 1210 (citing *Newdow v. Roberts*, 603 F.3d 1002, 1010–11 (D.C. Cir. 2010)). At this stage, courts do not "pass judgment on the strength" of the plaintiff's claims against any potential defendants. *Id.* Rather, courts need only "determine whether the plaintiff should have the opportunity to name that defendant in the first place." *Id.*

Here, Plaintiffs sufficiently allege that their requested discovery is necessary and likely to uncover the identity of the callers who allegedly violated Plaintiffs' rights under the TCPA. Plaintiffs state that "Doe Defendants have used many tactics to hide their identities," listing various methods of concealment. Pls.' Mot. at 4; Compl. ¶ 57. As a result, Plaintiffs have been unable to ascertain Defendants' identities. *Id.* ¶ 62.

Plaintiffs allege that they have "identified phone carriers, domain registrars, Sellers, Brokers, and others who have discoverable information related to the identities of the Callers and others who may be liable" and that "[s]ubpoenas to these parties should reveal the identities." Pls.' Mot. at 4; *see also* Compl. ¶ 64.  They allege that they have expertise and a proven track record of discovering unnamed defendants through similar processes.  Plaintiffs explain that "Plaintiffs' counsel has extensive experience uncovering the identities of unknown spammers through forensics and subpoenas," "counsel is a boutique law firm whose sole practice is representing clients who have received unwanted telephone spam," and that "counsel has an entire in-house investigative division whose only responsibility is tracking down and identifying telephone spammers" and whose "investigators have training and experience from the U.S. military in open source intelligence."  Pls.' Mot. at 5.  They also cite to similar actions in which Plaintiffs' counsel uncovered unknown spammers.  *Id.*  For example, after a court in this District approved a similar ex parte motion for expedited discovery by the same plaintiff, *see Champion v. Does 1–10*, No. 22-cv-00323 (D.D.C. Feb. 25, 2022) (RJL) (Minute Order), Plaintiff Champion issued more than thirty subpoenas, which ultimately revealed the identity of the spam sender, *see* Pl.'s Mot. to Transfer, *Champion v. Does 1–10*, No. 22-cv-00323 (D.D.C. Aug. 8, 2022), ECF No. 3.

Considering Doe Defendants' concealment of their identities and Plaintiffs' stated expertise, as demonstrated through success in numerous cases uncovering defendants' identities, the Court finds that Plaintiffs' requested discovery is necessary and likely to uncover the identities of Doe Defendants.

**2.  Personal Jurisdiction**

Relevancy also requires a "threshold showing" that the court will have personal jurisdiction over the unknown defendants. *AF Holdings, LLC*, 752 F.3d at 995. "In other words, if a plaintiff plainly has no realistic chance of successfully suing the defendant, [the court] will not allow the plaintiff to abuse the discovery process by seeking irrelevant information." *Strike 3 Holdings*, 964 F.3d at 1210–11 (cleaned up); *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 n.17 (1978) ("[W]hen the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied.").

Personal jurisdiction within the District of Columbia may be established under two different provisions: (1) general jurisdiction under D.C. Code § 13–422 (2001); and (2) specific jurisdiction under D.C. Code § 13–423 (2001). The general jurisdiction provision authorizes courts in this jurisdiction to "exercise general personal jurisdiction over a person who is 'domiciled in, organized under the laws of, or maintaining [a] principal place of business in, the District of Columbia as to any claim for relief.'" *Pease v. Burke*, 535 F. Supp. 2d 150, 152 (D.D.C. 2008) (EGS) (quoting D.C. Code § 13–422). "To establish personal jurisdiction over a nonresident, a court must… first examine whether jurisdiction is applicable under the state's longarm statute and then determine whether a finding of jurisdiction satisfies the constitutional requirements of due process." *Thompson Hine, LLP v. Taieb*, 734 F.3d 1187, 1189 (D.C. Cir. 2013) (quoting *GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000)). Pursuant to D.C. Code § 13–423, the District's long-arm statute, a court is authorized to exercise specific jurisdiction over a non-resident defendant who, among other things, "acts directly or by an agent, as to a claim for relief arising from the person's… transacting any business in the District of Columbia;… contracting to supply services in the District of Columbia;… [or] causing tortious injury in the District of Columbia by an act or omission in the

District of Columbia" or "outside the District of Columbia if [the defendant] regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia." D.C. Code § 13–423(a)(1)–(4).  While general personal jurisdiction permits a court to hear "a suit… without regard to the underlying claim's relationship to the defendant's activity" in the forum, specific personal jurisdiction allows only those claims "based on acts of a defendant that touch and concern the forum."  *Schwartz v. CDI Japan, Ltd.*, 938 F. Supp. 1, 5 (D.D.C. 1996) (citing *Steinberg v. Int'l Crim. Police Org.*, 672 F.2d 927, 928 (D.C. Cir. 1981)); *see also* D.C. Code § 13–423(b) ("When jurisdiction over a person is based solely upon [§ 13–423], only a claim for relief arising from acts enumerated in this section may be asserted against him.").

District of Columbia courts have interpreted the District of Columbia's specific jurisdiction provision "to provide jurisdiction to the full extent allowed by the Due Process Clause."  *U.S. v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995).  A court's jurisdiction over a defendant satisfies due process when there are "minimum contacts," *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945), between the defendant and the forum "such that he should reasonably anticipate being haled into court there," *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  Such minimum contacts must show that "the defendant purposefully avail[ed] [him]self of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

Plaintiffs have made out a "threshold showing" that this Court would have either general personal jurisdiction or, more likely, specific personal jurisdiction over Doe Defendants.  General personal jurisdiction under D.C. Code § 13–422 would be satisfied if any Doe Defendant is a natural person domiciled in the District of Columbia or a company organized and

7

maintaining a principle place of business in the District.  Plaintiffs allege that Doe Defendants are "unknown individuals and entities who initiated calls and text messages to Plaintiffs and class members, or who are otherwise liable for these calls and text messages" through personal, direct, or vicarious liability.  Compl. ¶¶ 25, 70–72.  There are "multiple parties" involved in a given spam telephone campaign.  Pls.' Mot. at 2–3.  For example, Plaintiffs allege that "[o]ver 95% of all the SMS spam sent by the Doe Defendants to Plaintiffs and class members involves two Brokers or more," in addition to sellers, callers, and lead generators.  *Id.*  Plaintiffs also indicate that "[c]allers are usually incorporated companies."  *Id.* at 3.  Considering this complex, multi-party scheme involving both individuals and incorporated companies, it is conceivable that one of the Doe Defendants involved is either a natural person domiciled in the District of Columbia or a company organized and operating in the District.

Specific personal jurisdiction under D.C. Code § 13–423 would be satisfied if any Doe Defendant has caused tortious injury in the District of Columbia such that there are minimum contacts between the Defendant and the District.  *See Kopff v. Battaglia*, 425 F. Supp. 2d 76, 82 (D.D.C. 2006) (JDB) (noting that TCPA claims are "based on alleged conduct in the nature of a tort").  Plaintiffs allege that in the last three years, Doe Defendants have sent 2,513 spam text messages and calls to Plaintiff Champion, who is a District of Columbia resident.  Compl. ¶ 29.  This is sufficient to demonstrate a "threshold showing" of specific personal jurisdiction.  Furthermore, the Court notes that it is likely that other members of the putative class of over 2,600 people are also from the District of Columbia.

It is not necessary to determine whether Plaintiffs will actually succeed in establishing personal jurisdiction over Doe Defendants because "the mere possibility that an unnamed defendant may defeat a complaint at a later stage is not a legitimate basis to deny a Rule 26(d)(1)

motion that otherwise satisfies Rule 26's discovery standards." *Strike 3 Holdings, LLC*, 964 F.3d at 1211. The Court finds that Plaintiffs have a "realistic chance" of identifying a Defendant over which this Court could exercise personal jurisdiction. *Id.* at 1210.

Altogether, the Court finds that Plaintiffs' request for expedited discovery satisfies the relevancy requirement.

### B. Proportionality

Having established the relevance of Plaintiffs' discovery request, the Court turns to proportionality. Rule 26(b)(1) instructs that in assessing proportionality, courts should consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

The rulemakers acknowledged that "[t]he parties may begin discovery without a full appreciation of the factors that bear on proportionality. A party requesting discovery, for example, may have little information about the burden or expense of responding." Fed. R. Civ. P. 26(b) advisory committee's note to the 2015 amendment. Here, where Defendants have yet to be identified, the Court cannot sufficiently address "the parties' resources." *Cf. Goodwin v. D.C.*, No. 21-cv-806, 2021 WL 1978795 at *6 n.2 (D.D.C. May 18, 2021) (BAH) (noting that "given the current posture of the case, before discovery has formally commenced, consideration of whether the discovery sought is 'unreasonably cumulative or duplicative' is inapplicable"). Additionally, because "the importance of the discovery in resolving the issues" is the same as the relevance of the discovery request discussed above—that being to identify unknown

Defendants—the Court does not address this factor. The Court addresses the remaining factors in turn.

### 1. Importance of the Issues At Stake

The importance of the issues at stake in the action leans in favor of granting Plaintiffs' discovery request. As previously explained, Plaintiffs allege that Doe Defendants conducted spam communications in violation of the TCPA. According to lawmakers, such communications are viewed as "a nuisance and an invasion of one's privacy rights in the home," a right "founded in the Constitution," and the TCPA's purpose was "to protect th[ose] privacy interests." S. Rep. No. 102-178, at 1, 9 (1991). Plaintiffs have alleged myriad violations of this privacy interest. They have not merely pointed to a handful of texts and calls; rather, they have compiled records "demonstrating "38,000+ spam calls and texts already reported by class members." Compl. ¶ 33. And because the TCPA's private right of action provides for at least $500 in damages per violation, Plaintiffs are pursuing tens of thousands of potential statutory violations. 47 U.S.C. §227(b)(3), (c)(5)(B). Given the TCPA's purpose and the scope of Plaintiffs' allegations, the Court finds the importance of the issue to be considerable.

### 2. Amount in Controversy

The extensive amount in controversy also suggests that the Court should grant expedited discovery. Plaintiffs' demand, as requested in their Class Action Complaint, is for $5,000,000. Civ. Cover Sheet at 2. Plaintiffs allege that they have records of over 38,000 spam calls and texts, but beyond that, that "Doe Defendants also sent millions of other text messages and calls to class members, including the 2,600+ other clients of Plaintiffs' legal counsel, without disclosing their identities." Compl. ¶¶ 16, 33. As noted above, the TCPA allows for recovery of "actual monetary loss from such a violation, or to receive $500 in damages for each such violation,

whichever is greater," 47 U.S.C. §227(b)(3), (c)(5)(B); in this case, there are allegedly thousands of violations.  Considering the substantial amount in controversy and number of spam communications currently alleged by Plaintiffs, this factor leans in favor of granting Plaintiffs' discovery request.

### 3. Relative Access to Relevant Information

The parties' relative access to relevant information is readily apparent in an ex parte motion for expedited discovery such as the one before the Court.  Plaintiffs assert that their counsel "has an entire in-house investigative division whose only responsibility is tracking down and identifying telephone spammers."  Pls.' Mot. at 5.  These investigators purportedly have intelligence training from the U.S. military and "over 20 years of experience in Intelligence operations."  *Id.*  Yet, Plaintiffs have been unable to identify the Doe Defendants due to the "many tactics" Defendants use to hide their identities and circumvent the TCPA's telemarketing guidelines.  *Id.* at 4.  Accordingly, Plaintiffs seek to subpoena Doe Defendants' collaborators, who they allege likely maintain "discoverable information that will lead to the identification of the Doe Defendants."  *Id.* at 6.  Because these third parties retain access over the identities of Doe Defendants that Plaintiffs have been unable to gather independently, this factor also counsels in favor of granting Plaintiffs' expedited discovery request.

### 4. Burden Versus Benefit of Request

Consideration of the burdens of Plaintiffs' discovery request, as compared to the likely benefits, suggests limiting the breadth of their demand.  Courts must ensure that the benefits are realized without imposing an undue burden on the subpoenaed party.  *See* Fed. R. Civ. P. 26(b)(1); *see also* Fed. R. Civ. P. 45(d)(3)(A)(iv) (describing the court's duty, upon a timely motion, to modify a subpoena that "subjects a person to undue burden").

11

Plaintiffs seek to subpoena (1) phone carriers, (2) domain registrars and domain-related parties, (3) sellers and brokers, and (4) other parties. *See* Pls.' Mot. at 6–9. As for the first, second, and third categories, Plaintiffs list by name specific entities who they allege have "discoverable information that will lead to the identification of the Doe Defendants." *Id.* at 6. First, Plaintiffs name eight phone carriers who allegedly "have information about who their customer was who initiated the calls or texts," indicating that Doe Defendants are customers of said phone carriers. *Id.* at 6. Second, Plaintiffs name twelve domain registrars and domain-related parties, which they identified using URLs in the spam text messages that Plaintiffs received. *See id.* at 7. Third, Plaintiffs name twenty-three sellers and brokers who they allege have information to assist in identifying Doe Defendants and their involvement in the spam scheme. *See id.* at 8. The Court is satisfied that as for these named entities, Plaintiffs have alleged a link between the entities sought to be subpoenaed and Doe Defendants such that a benefit—revealing a Doe Defendant's identity—is likely should subpoenas be issued. However, for each of these three categories, Plaintiffs also indicate that the list of entities is not exhaustive. *See, e.g.*, *id.* at 8 ("The Sellers and Brokers likely to have information include, *but are not limited to*…") (emphasis added). The Court is wary of the burdens such subpoenas may impose absent any allegations of ties to Doe Defendants. Accordingly, the Court limits Plaintiffs' discovery request related to (1) phone carriers, 2) domain registrars and domain-related parties, and (3) sellers and brokers to only those entities listed by name in Plaintiff's Motion.

As for the fourth category, "Subpoenas to Other Parties," Plaintiffs seem to propose seemingly limitless discovery. They state that "[t]he responses to Plaintiffs' subpoenas may reveal additional parties who have information which would assist Plaintiff in identifying Defendants, such as UPS Stores, landlords, email providers, and others." *Id.* at 9. This request

cannot be said to confer an identifiable benefit on Plaintiffs and, on the other hand, may impose an undue burden on entities who are irrelevant to the litigation. Once Doe Defendants are identified and named as parties to this litigation, routine discovery procedures and disclosures may uncover additional wrongdoers, at which time additional subpoenas may become necessary. Until then or until other information comes to light, the Court denies Plaintiffs' request to subpoena "additional parties."

## IV.     CONCLUSION

The Court has found that Plaintiffs' expedited discovery request is both relevant to Plaintiffs' claims and, for some of the requested subpoenas, proportional to the needs of the case. For the foregoing reasons, the Court shall **GRANT-IN-PART** and **DENY-IN-PART** Plaintiffs' [3] Ex Parte Motion for Expedited Discovery. The Court **GRANTS** Plaintiffs' motion with respect to the phone carriers, domain registrars and domain-related parties, and sellers and brokers that Plaintiffs have listed by name in their Motion. The Court **DENIES WITHOUT PREJUDICE** Plaintiffs' motion with respect to additional phone carriers, domain registrars and domain-related parties, and sellers and brokers that are not named in the Motion, as well as any "additional parties" not named in the Motion. An Order accompanies this Memorandum Opinion.

Date: November 4, 2022

                                                  /s/
                                  COLLEN KOLLAR-KOTELLY
                                  United States District Judge